Filed 3/16/16 Certified for Publication 4/5/16 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.K., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E064295 |
| Plaintiff and Respondent, | (Super.Ct.No. J260659) |
| v. | OPINION |
| C.K., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County. Annemarie G. Pace, Judge. Dismissed.

Marisa L.D. Conroy, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, Danielle E. Wuchenich, Deputy County Counsel, for Plaintiff and Respondent.

1

Defendant and appellant C.K. (father) appeals from the juvenile court's disposition order under Welfare and Institutions Code[1] section 361, subdivision (c)(1), removing his child, A.K., from his custody after declaring her to be a dependent of the court. He contends the evidence fails to establish that he suffered from substance abuse such that removal was the only means of protecting her. We affirm.

## I. PROCEDURAL BACKGROUND AND FACTS

On June 8, 2015, the San Bernardino County Children and Family Services (CFS) petitioned the juvenile court to exercise jurisdiction under section 300, subdivisions (b) [failure to protect] and (j) [abuse of sibling]. Subdivision (b)(1) alleged mother has a history of drug and alcohol abuse and has resisted or refused to comply with prior treatment. Subdivision (b)(2) alleged father suffers from "substance abuse" and is unable to provide adequate and responsible care for minor. Subdivision (j) alleged that minor's half siblings were previously removed from mother's care due to her substance abuse and domestic violence in the home, and she failed to reunite with them.

At the time of child's birth she tested positive for amphetamine. At the hospital father became very angry, yelling at and threatening the social worker upon learning about the current case. The police were called, and father ultimately left the hospital after being directed to do so. The court held a detention hearing on June 9, 2015, removed the child from parents' custody (mother and father were not married, but living together), and placed her in foster care.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

The jurisdiction/disposition report, filed on June 25, 2015, recommended that the child be removed and placed in foster care and that reunification services be provided to father only. The social worker spoke with father by phone, asking him to submit to drug testing. Father advised that "he will not do anything that [the social worker] tells him to do." He further stated that he "wants no more communication" with the social worker and said not to call his home. Father had pending criminal charges for a violating Health and Safety Code sections 11377 (possession of a controlled substance) and 11364 (possession of controlled substance paraphernalia) on December 17, 2014. On June 30, 2015, the court ordered father to drug test and advised him that his failure to do so would be deemed a positive test. Despite the court order, father failed to drug test on multiple occasions.

On August 10, 2015, the court held a contested jurisdiction/disposition hearing, and both father and mother failed to appear. After listening to argument, the court found the allegations true as to mother and denied her reunification services. As to father, the court considered his pending criminal charges for drug possession from 2014, along with his failure to drug test, and found the allegation regarding his substance abuse true. The court also found father was the presumed father, declared the minor a dependent of the court, removed her from her parents, and ordered reunifications services for father only.

## II. REMOVAL OF THE CHILD FROM FATHER'S CUSTODY

Father contends the evidence is insufficient to show that he suffered from substance abuse, and as a result, was unable to provide adequate and responsible care for his child. In response, CFS claims father is precluded from raising this issue on appeal

3

under the well-establish doctrine of disentitlement, by which an appellate court may stay or dismiss an appeal by a party who has refused to obey the trial court's legal orders. We agree with CFS.

"Appellate disentitlement 'is not a jurisdictional doctrine, but a discretionary tool that may be applied when the balance of the equitable concerns make it a proper sanction . . . .' [Citation.] In criminal cases, it is often applied when the appellant is a fugitive from justice. [Citation.] In dependency cases, the doctrine has been applied only in cases of the most egregious conduct by the appellant, which frustrates the purpose of dependency law and makes it impossible to protect the child or act in the child's best interests. [Citations.]

"In the dependency context, the disentitlement doctrine has been applied to conduct other than the abduction of children. For example, in *In re C.C.* [(2003)] 111 Cal.App.4th 76 [Fourth Dist., Div. Two], the court held that because the mother refused to comply with a court-ordered psychological evaluation she was disentitled to reunification services. In explaining the application of the disentitlement doctrine to the facts before it, the court observed that, in addition to abduction cases, the doctrine applies to 'other kinds of conduct [in dependency proceedings]. In particular, it extends to conduct that . . . frustrates the ability of another party to obtain information it needs to protect its own legal rights. In *TMS, Inc. v. Aihara* (1999) 71 Cal.App.4th 377 [, 379-380] . . . judgment debtors refused to comply with a court order to answer postjudgment interrogatories designed to secure information to aid in enforcement of the money

4

judgment against them. The court dismissed their appeal from the judgment, holding it had the inherent power to do so without a judgment of contempt. [Citation.]' [Citation.]

"The court in *In re C.C.*, *supra*, 111 Cal.App.4th 76, concluded that the mother's refusal to participate in the court-ordered psychological evaluation barred her right to reunification services. '[The m]other's conduct makes it impossible for the court to perform its obligation to determine, pursuant to section 361.5(b)(2), whether her mental disability renders her incapable of utilizing reunification services. [The m]other's conduct also interferes with the legal rights of [the m]inor. . . . [The m]other, like the offending father in *Kamelia S.* [(2000) 82 Cal.App.4th 1224, 1229], is "entirely responsible for paralyzing the court's ability to implement the procedures intended to benefit the interests of the dependent minor." [Citation.]' [Citation.]" (*In re E.M.* (2012) 204 Cal.App.4th 467, 474-475.)

"'The disentitlement doctrine is based on the equitable notion that a party to an action cannot seek the assistance of a court while the party "stands in an attitude of contempt to legal orders and processes of the courts of this state. [Citations.]" [Citation.] A formal judgment of contempt, however, is not a prerequisite to exercising [an appellate court's] power to dismiss; rather, we may dismiss an appeal where there has been *willful disobedience or obstructive tactics.* [Citation.]' (Italics added.) [¶] This broader formulation of the doctrine suggests that it is not limited to cases in which the appellant is in violation of the order from which he or she appeals, but rather may also apply to cases in which the appellant has violated orders other than the one from which the appeal has been taken. . . . [¶] . . .[¶] Thus, the disentitlement doctrine is not only applicable to

5

disobedience of the order being appealed; it also applies to 'egregious' conduct that frustrates the juvenile court from carrying out its orders. . . ." (*In re E.M.*, *supra*, 204 Cal.App.4th at pp. 476-477.)

Here, the record shows that from the inception of the case father was uncooperative. He possessed "an attitude of contempt to legal orders" and the dependency process. (*MacPherson v. MacPherson* (1939) 13 Cal.2d 271, 277.) He threatened the social workers with physical harm forcing the need for police intervention, refused to answer questions, and specifically told a social worker that he would not do anything the social worker requested of him. At the detention hearing, he left the court without notifying his lawyer in advance, denying the court the ability to ask him any questions. Father claimed to have Indian ancestry, but as of the date of the jurisdiction/disposition report, he had refused to provide CFS with the evidence necessary to notify the possible tribes. He refused to comply with court-ordered drug tests, even though his daughter tested positive for amphetamines at her birth, mother claimed that those around her were using drugs, and he had pending charges for possession of methamphetamine. Father's conduct frustrated, if not paralyzed, the ability of CFS, the court, and his own attorney to obtain the information necessary to determine whether he is an offending parent, and what services, if any, are necessary to enable him to reunify with his daughter.

Of course, it is not unusual for parents in dependency cases to fail to cooperate completely with CFS and the juvenile court. Father's behavior, however, has demonstrated an extraordinary and unmitigated pattern of obstruction. His refusal to

6

drug test and participate in his daughter's dependency case, and his hostile behavior toward the social workers, shows a pervasive indifference to the child's safety and to the amelioration of the conditions giving rise to the dependency. "Under these circumstances, there is an adequate basis for determining that [father's] conduct was sufficiently egregious to warrant the application of the doctrine of disentitlement and dismiss[al of his] appeal[]." (*In re E.M.*, *supra*, 204 Cal.App.4th at p. 478, fn. omitted.)

## III.  DISPOSITION

The appeal from the August 10, 2015, jurisdiction and disposition orders is dismissed.


HOLLENHORST
Acting P. J.

We concur:

MILLER
J.

CODRINGTON
J.

Filed 4/5/16

# CERTIFIED FOR PUBLICATION

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| In re A.K., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E064295 |
| Plaintiff and Respondent, | (Super.Ct.No. J260659) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| C.K., | |
| Defendant and Appellant. | |

A request having been made to this court pursuant to California Rules of Court, rule 8.1120(a) for publication of a nonpublished opinion heretofore filed in the above-entitled matter on March 16, 2016, and it appearing that the opinion meets the standard for publication as specified in California Rules of Court, rule 8.1105(c);

IT IS ORDERED that said opinion be certified for publication pursuant to California Rules of Court, rule 8.1105(b).  The opinion filed in this matter on March 16, 2016, is certified for publication.

HOLLENHORST
Acting P. J.

We concur:

MILLER
J.

CODRINGTON
J.

1