Filed 9/24/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| In re Molly T., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>C.T.,<br><br>        Defendant and Appellant. | E069626<br><br>(Super.Ct.No. J272764)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed.

John P. McCurley, under appointment by the Court of Appeal, for Defendant and Appellant.

Michelle D. Blakemore, County Counsel, Michael A. Markel, Principal Assistant County Counsel, Jamila Bayati, Deputy County Counsel, for Plaintiff and Respondent.

I.

INTRODUCTION

In dependency proceedings, "'reunification services' are 'activities designed to provide time-limited foster care services to prevent or remedy neglect, abuse, or exploitation, when the child cannot safely remain at home, and *needs temporary foster care*, while services are provided to reunite the family.'" (*In re A.C.* (2008) 169 Cal.App.4th 636, 643.) In this case, defendant and appellant, C.T. (Mother), appeals from the dependency court's dispositional judgment *granting* Mother reunification services in her absence, under Welfare and Institutions Code section 361.5[1]

Mother claims that her whereabouts were unknown on the date of the dispositional hearing for purposes of subdivision (b)(1) of section 361.5. Unlike other provisions of section 361.5, subdivision (b), a finding that the whereabouts of the parent or guardian are unknown under subparagraph (1) results in the setting of a six-month hearing rather than a selection and implementation hearing. If the court denies reunification services under section 361.5, subdivision (b)(1) and if the whereabouts of the parent become known within the first six months, the court may then order reunification services. (§ 361.5, subd. (d).) As a result, a parent could potentially gain six more months to reunify with the child up to the maximum 12-month period of reunification services from the date of entry into the dependency system. (§ 361.5, subd. (a)(1)(B).) In our case,

---

[1] Unless otherwise noted, all statutory references are to the Welfare and Institutions Code.

section 361.5, subdivision (b)(1) was found not applicable and reunification services were ordered in Mother's absence. If mother does not participate in the first six-month period, then the court is likely to set a selection and implementation hearing at the six-month review hearing. (§ 366.21, subd. (e)(3).) Mother contends that the dependency court abused its discretion by commencing reunification services rather than withholding services under subdivision (b)(1) of section 361.5. Mother, in essence, seeks to use this bypass provision (§ 361.5, subd. (b)(1)) as a sword by arguing that the trial court abused its discretion by granting her reunification services instead of denying them under section 361.5, subdivision (b)(1).

In support of her contention, Mother argues that the dependency court misconstrued subdivision (b)(1) of section 361.5, that the court acted contrary to the intent of section 361.5 and that, in so doing, the court prejudiced her ability to actually receive reunification services. Mother requests that we reverse the dispositional judgment and direct the dependency court to apply subdivision (b)(1) of section 361.5 to bypass her for reunification services. Plaintiff and respondent, San Bernardino County Children and Family Services (CFS), argues that Mother's contention lacks merit. CFS also argues that the court's action was not contrary to the intent of section 361.5, that any dispositional error was harmless, and that the disentitlement doctrine requires dismissal of Mother's appeal.

We agree with CFS on all points, including that Mother's conduct was sufficiently egregious to warrant dismissal of her appeal under the disentitlement doctrine. We nonetheless address the merits and reject Mother's contention that the trial court erred in ordering reunification services in Mother's absence, rather than bypassing services for Mother under section 361.5, subdivision (b)(1). To find otherwise would allow parents to absent themselves from a dependency proceeding and then invoke the bypass provision, section 361.5, subdivision (b)(1), in order to affirmatively extend their entitlement to reunification services. Mother's proposed interpretation of the bypass provision turns the statute on its head. We find that the trial court did not misconstrue section 361.5, subdivision (b)(1) or act contrary to its intent. We affirm the judgment.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Relevant History of Mother and Child*

Mother was a minor and a former court dependent when she gave birth to Molly T. (child) in September 2017. By her own admission, both Mother and N.E., the alleged father, are homeless substance abusers who cannot care for their child. Mother is also suffering from untreated mental illness that caused her to be placed on an involuntary psychiatric hold in October 2016, when she was found cutting her wrist. Since Mother and child tested positive for amphetamines at the time of the child's birth, both were referred to a social services practitioner (SSP) on September 10, 2017. Mother was not cooperative and was anxious to leave the hospital. Mother was told that if she left the

4

hospital, she would be abandoning the baby. Mother told the SSP that she and N.E. knew they couldn't take the child with them and wanted N.E.'s foster mother to "have the child." The SSP requested and was granted a detention warrant, but he was unable to serve it on the parents because Mother and N.E. had left the hospital without their child.

B. *Juvenile Dependency Petition—September 12, 2017*

A "Juvenile Dependency Petition" was filed on September 12, 2017. The petition stated in allegation "G-6" that Mother's whereabouts were unknown and that "[r]easonable efforts to locate the mother were unsuccessful." The petition also listed Mother's guardian as Mother's older sister, J.C.

C. *Detention Hearing—September 13, 2017*

Although J.C. was present, Mother did not appear at the detention hearing held on September 13, 2017. During the hearing, the dependency court read and considered the September 12, 2017, "Detention Report" and determined that the child was subject to section 300 and a prima facie case for the child's out-of-home detention had been established. The court ordered the child be removed from Mother and N.E. and placed in temporary custody of CFS.

D. *Jurisdiction/Disposition Hearing—October 16, 2017*

J.C. was present at the first jurisdiction/disposition hearing held on October 16, 2017, but Mother again failed to appear despite having been given the SSP's contact information in a text message from J.C. a few days earlier. In response to the contact information given to her and J.C.'s request that she call the SSP, Mother stated

5

she would contact the SSP. However, the SSP had no contact with Mother. When J.C. was specifically asked by the court whether Mother was in the town of Crestline, J.C. affirmed that Mother was somewhere in Crestline, and she had seen Mother walking through Crestline on October 1, 2017.

On October 10, 2017, CFS filed a "Declaration of Due Diligence" that listed three "909" area code phone numbers for Mother and three addresses for Mother in Crestline. The declaration indicated that all three of the phone numbers were called on September 26, 2017. The first phone number had voicemail, on which a message was left, the second was a wrong number, and the third had no voicemail set up. The third phone number was called again on September 27, 2017, but the voicemail was still not set up. According to the declaration, the three Crestline addresses for Mother were collected from reliable search sources, such as the sheriff, the Department of Motor Vehicles, and Mother's medical records. The declaration included copies of the certified mail receipts for the notices sent to each address.

E. *Jurisdiction/Disposition Hearing—December 7, 2017*

At the continued jurisdiction/disposition hearing on December 7, 2017, the dependency court noted that Mother was not present and stated it had read and considered the detention report, the declaration of due diligence, and the jurisdiction/disposition report. The court received all the materials into evidence and adopted the findings on pages 18 through 21 of the jurisdiction/disposition report, with the exception of findings

6

regarding the Indian Child Welfare Act (25 U.S.C.A. § 1901 et. seq.) notice requirements (finding no. 6) and correction of Mother's name (finding no. 17).

Because the jurisdiction/disposition report recommended that reunification services should be ordered, Mother's counsel requested that the dependency court bypass Mother for services given that her whereabouts were unknown. The court heard arguments from both sides on the request. CFS argued that the bypass provision (§ 361.5, subd. (b)(1)) was inapplicable because Mother and N.E. had received legal notice of the proceedings. CFS also advised the court that the whereabouts unknown allegations had been dismissed, and the declaration of due diligence did not conclude that Mother's whereabouts were unknown. Mother's counsel argued that Mother had received neither legal nor actual notice of the proceedings.

After both sides conferred with the court off the record, the court addressed Mother's counsel and stated: "[W]hat you suggest is that the Court knows that she doesn't know, and she is not findable, and that's where you're asking me to interpret between the lines. And frankly, I don't know that—it's actually speculation whether or not she knows of this. For all I know she knows of this and is choosing not to be part of this right now because of the reasons [CFS] said. [¶] Either way, there is speculation. So to say that the Court knows that she can't be found isn't actually true. So I don't know that she can't be found. I know that she has been noticed. I don't have any case law to the contrary or any authority that you've given to the contrary." The court then ordered reunification services over the objection of Mother's counsel.

7

III.

DISCUSSION

Mother contends that her whereabouts were unknown on the date of the dispositional hearing and, thus, the dependency court abused its discretion by commencing reunification services rather than withholding them under subdivision (b)(1) of section 361.5. In support of her contention, Mother argues that the dependency court misapplied subdivision (b)(1) of section 361.5. Mother also argues that the court's action was contrary to the intent of section 361.5, which is to facilitate family reunification, since the court's action has instead prejudiced her ability to actually receive reunification services.

CFS argues that Mother's contention is without merit because the dependency court lacked clear and convincing evidence that Mother's whereabouts were unknown. CFS argues as well that the court's action was not contrary to the intent of section 361.5, that any error was harmless, and that the disentitlement doctrine requires dismissal of her appeal.

A. *Disentitlement Doctrine*

CFS argues that Mother's conduct falls within the scope of the disentitlement doctrine because she has made it impossible for the dependency court to protect her child's best interests and has thus frustrated the dependency court's process. We agree.

8

"'"The disentitlement doctrine is based on the equitable notion that a party to an action cannot seek the assistance of a court while the party 'stands in an attitude of contempt to legal orders and processes of the courts of this state. [Citations.]' [Citation.] A formal judgment of contempt, however, is not a prerequisite to exercising [an appellate court's] power to dismiss; rather, we may dismiss an appeal where there has been *willful disobedience or obstructive tactics*. [Citation.]" (Italics added.) [¶] This broader formulation of the doctrine suggests that it is not limited to cases in which the appellant is in violation of the order from which he or she appeals, but rather may also apply to cases in which the appellant has violated orders other than the one from which the appeal has been taken. . . . [¶] . . . [¶] Thus, the disentitlement doctrine is not only applicable to disobedience of the order being appealed; it also applies to "egregious" conduct that frustrates the juvenile court from carrying out its orders. . . .' [Citation.]" (*In re A.K.* (2016) 246 Cal.App.4th 281, 285-286.) "'In dependency cases, the doctrine has been applied only in cases of the most egregious conduct by the appellant, which frustrates the purpose of dependency law and makes it impossible to protect the child or act in the child's best interests.'" (*Id.* at p. 285.)

In this dependency case, Mother abandoned her child at the hospital without providing for the child's care and support and without establishing any means by which CFS could work directly with her toward family reunification. CFS attempted to give Mother actual notice of the dependency proceedings by way of three "909" area code phone numbers listed for her by reliable search sources, such as the sheriff, the

Department of Motor Vehicles, and Mother's medical records. CFS called all three phone numbers on September 26, 2017. CFS left a voicemail message on the first phone number, the second was a wrong phone number, and the third phone number had no voicemail set up. CFS called the third phone number again on September 27, 2017, but the voicemail was still not set up. CFS also sent three separate notices of the dependency proceedings by certified mail to three Crestline addresses that the same reliable search sources listed for Mother. Mother failed to appear at any of the dependency court's hearings, even after receiving SSP's contact information by way of Facebook message exchanges with J.C. Mother has thus engaged in tactics obstructive to CFS's purpose by effectively abandoning her child, and this fact is acknowledged even by Mother's counsel.

Under these circumstances, we therefore conclude that Mother's conduct has been sufficiently egregious to warrant the application of the doctrine of disentitlement and dismissal of her appeal. We nonetheless will consider on the merits Mother's contention that the dependency court abused its discretion by commencing reunification services rather than withholding them under subdivision (b)(1) of section 361.5.

10

B. *The Dependency Court Did Not Abuse its Discretion by Commencing Reunification Services Rather Than Withholding Them under Subdivision (b)(1) of Section 361.5*

1. *Applicable Law*

"'Section 361.5 contains general rules governing the provision of reunification services to parents of minors removed from parental custody. Reunification services are mandated under section 361.5, subdivision (a) except where a parent is unavailable, mentally disabled or has been extremely abusive towards a child.'" (*In re A.C.*, *supra*, 169 Cal.App.4th at p. 644.) Subdivision (b)(1) of section 361.5 states that "[r]eunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, any of the following: [¶] . . . That the whereabouts of the parent or guardian are unknown. A finding pursuant to this paragraph shall be supported by an affidavit or by proof that a reasonably diligent search has failed to locate the parent or guardian. The posting or publication of notices is not required in that search." In other words, this statute permits denial of reunification services if the dependency court finds by clear and convincing evidence that the whereabouts of the parent or guardian are unknown, based on proof that a reasonably diligent search failed to locate the parent or guardian. Conversely, if the dependency court finds no clear and convincing evidence that the whereabouts of the parent or guardian are unknown, and no other exception applies, "the court must order the county welfare department to provide reunification services to the child and the child's mother

11

and statutorily presumed parent, or the child's legal guardian, to facilitate reunification of the family as required in section 361.5." (Cal. Rules of Court, Rule 5.695(g)(1).)

### 2. *Standard of Review*

"The 'clear and convincing' standard specified in section 361.5, subdivision (b), is for the edification and guidance of the trial court and not a standard for appellate review." (*Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 880.) "A juvenile court's dispositional orders, including those respecting reunification services, are subject to that court's broad discretion. To reverse such an order, a reviewing court must find a clear abuse of discretion." (*In re N.M.* (2003) 108 Cal.App.4th 845, 852.) A court abuses its discretion when its decision is """"arbitrary, capricious, or patently absurd [and results] in a manifest miscarriage of justice."""" (*Constance K. v. Superior Court* (1998) 61 Cal.App.4th 689, 705; see *In re Mary G.* (2007) 151 Cal.App.4th 184, 205.) Accordingly, a court's exercise of discretion will not be disturbed on appeal, unless we find that no judge could have reasonably made its decision, given all of the evidence, viewed most favorably in support of the dependency court's action. (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.)

### 3. *Analysis*

During the jurisdiction/disposition hearing on December 7, 2017, the dependency court ordered reunification services based in part on the October 10, 2017, declaration of due diligence from CFS. The declaration listed three phone numbers for Mother and attested to each of the phone numbers having been called and a voicemail message left in

one instance.  The declaration also listed the three Crestline addresses for Mother, along with the certified mail receipts for notices sent to each address.  The declaration did not conclude that Mother's whereabouts were unknown but that legal notice pursuant to sections 291 and 316.1 was "complete."

In addition to the declaration of due diligence, the court relied on the jurisdiction/disposition report, which stated that Mother's whereabouts were unknown pursuant to allegation "G-6" of the September 12, 2017, juvenile dependency petition.  CFS recommended in the jurisdiction/disposition report that the dependency court find "by clear and convincing evidence" that "reasonably diligent efforts" to locate Mother were unsuccessful.  The court ultimately incorporated this recommended finding in its December 7, 2017, minute order.  However, at the disposition hearing, the court dismissed the unknown whereabouts allegation at the request of CFS in both the petition and the jurisdiction/disposition report.

The dependency court also relied on evidence of messages exchanged between Mother and J.C., showing that J.C. provided Mother with the SSP's contact information.  The court likewise heard testimony from J.C. that Mother was somewhere in Crestline.

Given all of the methods CFS used to provide Mother with legal notice and the independent evidence that Mother was in Crestline, the dependency court had no proof that a reasonably diligent search had failed to locate mother.  Based on the totality of the evidence, we conclude the court could have reasonably inferred that Mother was aware of the dependency proceedings and was evading CFS.  In turn, the court reasonably

13

concluded there was insufficient evidence that Mother's whereabouts were unknown. The dependency court therefore did not abuse its discretion by commencing reunification services rather than withholding them under subdivision (b)(1) of section 361.5.

C. *The Dependency Court Did Not Misconstrue Section 361.5, Subdivision (b)(1) or Act Contrary to Its Intent*

Mother argues the dependency court misconstrued subdivision (b)(1) of section 361.5 as not applying because Mother received legal notice of her child's dependency proceedings. Mother argues that actual notice was required.

First, we disagree that actual notice of the dependency proceedings was required. "'In juvenile dependency proceedings, due process requires parents be given notice that is reasonably calculated to advise them an action is pending and afford them an opportunity to defend.'" (*In re R.L.* (2016) 4 Cal.App.5th 125, 145.) Accordingly, service by certified mail, return receipt requested, is the statutorily mandated notice in dependent child proceedings like this one, when "the child is detained and the persons required to be noticed are not present at the initial petition hearing." (§ 291, subd. (e)(1).) Such notice does not even require that the relevant agency "receive a return receipt signed by the parent." (*In re J.H.* (2007) 158 Cal.App.4th 174, 183.)

The statutory requirement was, moreover, exceeded in this case by the efforts made to provide Mother with not only legal notice, but actual notice of the dependency proceedings. Three separate notices were sent by certified mail to the three different Crestline addresses collected from various reliable search sources. Also, CFS phone

numbers listed for Mother were called, with one instance of leaving a voicemail message. These efforts were "'such as one, desirous of actually informing the absentee, might reasonably adopt to accomplish it.'" (*In re Antonio F*. (1978) 78 Cal.App.3d 440, 450.)

Second, under the plain meaning of section 361.5, subdivision (b)(1), the unknown whereabouts of a parent must be established by showing an inability to locate the parent after a reasonably diligent search. (Welf. & Inst. Code, § 361.5, subd. (b)(1) ["A finding pursuant to this paragraph shall be supported by an affidavit or by proof that a reasonably diligent search has failed to locate the parent or guardian."].) Here, the statute's unknown whereabouts condition was not satisfied because a reasonably diligent search located Mother in Crestline, and CFS had reliable contact information for her. At the December 7, 2017, jurisdiction/disposition hearing, the dependency court stated: "[T]o say that the Court knows that she can't be found isn't actually true. So I don't know that she can't be found. I know that she has been noticed." The court's finding that Mother received proper legal notice was only one of several appropriate factors the court relied upon in finding that Mother's whereabouts were not unknown under subdivision (b)(1) of section 361.5.

Mother also argues that the dependency court's decision to commence reunification services was contrary to the intent of section 361.5, which is to promote family reunification. Mother's argument is unavailing.

15

The California Legislature enacted section 361.5 as part of a statutory scheme responsive to federal laws that mandate state provision of family reunification services.[2] (*In re A.G.* (2017) 12 Cal.App.5th 994, 1004.)  The statutory scheme reflects the goal of family reunification (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1228), with "'precise and demanding substantive . . . requirements'" meant to "'protect the legitimate interests of the parents'" in the "provision of services to safely reunify families." (*In re A.G.*, *supra*, at pp. 1004-1005.)  "'Reunification services implement "the law's strong preference for maintaining the family relationships if at all possible."'" (*In re Nolan W.*, *supra*, at p. 1228.)

Consequently, reunification services are not meant to be discretionary.  (*In re A.G.*, *supra*, 12 Cal.App.5th at pp. 1004-1005.)  "'When a child is removed from a parent's custody, the juvenile court ordinarily *must* order child welfare services for the minor and the parent for the purpose of facilitating reunification of the family.'" (*M.V. v. Superior Court* (2008) 167 Cal.App.4th 166, 174, italics added; see also § 361.5, subd. (a).)  From "roughly the jurisdictional hearing (§ 355) to the six-month review hearing (§ 366.21, subd. (e)), [reunification] services are afforded essentially as a matter of right (§ 361.5, subd. (a)) unless the trial court makes one of a series of statutorily specified findings relating to parental mental disability, abandonment of the child, or other specific malfeasance (§ 361.5, subd. (b))." (*Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 845, fn. omitted.)  Reunification services are thus presumed at the outset of the

<hr />

[2]  Title 42 United States Code sections 671, (a)(15)(B), 629, 629(a)(7).  (*In re A.G.*, *supra*, 12 Cal.App.5th at p. 1004, fn. 5.)

dependency proceedings.  (*Ibid.*; *In re Nolan W.*, *supra*, 45 Cal.4th at p. 1228.)  For this reason, reunification services are provided even when a parent is institutionalized or incarcerated.  (See § 361.5, subd. (e).)  The clear and convincing evidence standard applied in section 361.5, subdivision (b), "reflects a legislative intent to condition denial of reunification services on a heightened level of proof beyond the preponderance of the evidence standard."  (*K.F. v. Superior Court* (2014) 224 Cal.App.4th 1369, 1388.)

In view of the foregoing, we conclude the dependency court did not misconstrue section 361.5, subdivision (b)(1) or act contrary to its intent when it ordered reunification services for Mother.  To construe this provision as Mother urges would allow Mother to use this bypass provision as a sword to intentionally avoid receiving court-ordered reunification services, whereas the bypass provision was intended to be used as a shield, to protect parents from being deprived of reunification services.  The court thus reasonably concluded the bypass provision did not apply because there was no clear and convincing evidence that Mother's whereabouts were unknown.

C.  *The Dependency Court Did Not Commit Prejudicial Error*

Mother contends that the dependency court's decision to commence reunification services constitutes prejudicial error.  We disagree.  If there was any error, it was harmless.

Mother argues that the court's order granting reunification services will deny her the opportunity to actually receive reunification services, because the court is only

17

required to order six months of such services. (§ 361.5, subd. (a)(1)(B).)[3] To the contrary, the order granting Mother reunification services preserved Mother's right to reunification services, which could be extended at the six-month review hearing. (§ 366.21, subd. (e); *Tonya M. v. Superior Court*, *supra*, 42 Cal.4th at p. 845.) Had reunification services been denied, the burden would have shifted to Mother to show that termination of parental rights was not in the child's best interest. (See § 366.26, sub. (c)(1); see also *In re Nolan W.*, *supra*, 45 Cal.4th at p. 1235.)

Mother also argues that she will be prejudiced in possible future dependency proceedings if she is unsuccessful reunifying in the instant case. This argument is founded on pure speculation and is not a valid basis for finding prejudicial error. We therefore conclude the dependency court did not commit prejudicial error.

---

[3] The general rule for a child under the age of three on the date of initial removal is that court-ordered services must be provided for six months from the date of the dispositional hearing, but no longer than 12 months from the date the child entered foster care. (§ 361.5, subd. (a)(1)(B).) Nevertheless, "court-ordered services may be extended up to a maximum time period not to exceed 18 months after the date the child was originally removed," if "the permanent plan for the child is that he or she will be returned and safely maintained in the home within the extended time period." (§ 361.5, subd. (a)(3)(A); see § 366.21, subds. (e), (f), (g)(1); see also *In re A.C.*, *supra*, 169 Cal.App.4th at pp. 642-643.)

18

IV.

DISPOSITION

The judgment is affirmed.

CERTIFIED FOR PUBLICATION

CODRINGTON

J.

We concur:

McKINSTER

Acting P. J.

FIELDS

J.

19