Filed 2/10/22  T-N.H. v. Superior Court CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| T-N.H.,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF ALAMEDA COUNTY,<br><br>Respondent;<br><br>ALAMEDA COUNTY SOCIAL SERVICES AGENCY et al.,<br><br>Real Parties in Interest. | A163878<br><br>(Alameda County<br>Super. Ct. Nos. JD032537-01,<br>JD032538-01) |

T-N.H. (mother) seeks extraordinary relief from a juvenile court order terminating reunification services and setting a Welfare and Institutions Code section 366.26 permanency planning hearing for her two daughters, S.H. and J.G. (collectively, children).[1]  Mother challenges the court's finding that she received reasonable reunification services.  We deny the petition on the merits.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.  We recite only those facts necessary to resolve the issue raised.

1

## BACKGROUND

In July 2020, the Alameda County Social Services Agency (Agency) filed a petition alleging S.H., then seven years old, and J.G., then two years old, came within section 300, subdivisions (b) and (g). As amended, and as relevant here, the petition alleged mother's substance abuse and mental health issues placed the children at risk of harm under section 300, subdivision (b). Mother disclosed suffering from mental health conditions — including depression and anxiety — and told the Agency she lacked a support system to assist her when she was "feeling overwhelmed or unable to find child care." She was "currently taking" marijuana and had previously used "other substances." Mother expressed a willingness to "drug test" and an interest in finding new housing and "expanding her support network."

The juvenile court detained the children and ordered reunification services for mother. These included substance use treatment, counseling and mental health services, visitation, and parenting education. The Agency encouraged mother to "complete the substance use and mental health evaluations." Mother completed a substance abuse evaluation but was denied entry into a treatment program in August 2020 after she mistreated staff. By October, mother had missed a scheduled visit with the children, had failed to communicate with the Agency, and had engaged in "threatening" behavior with the children's caregivers. The Agency again encouraged mother to complete a mental health evaluation; it subsequently provided mother with a referral for a therapist and a medication evaluation. Mother "never attended the scheduled appointments." In late 2020 and early 2021, mother tested positive for amphetamines, cocaine, and marijuana.

2

At the February 2021 jurisdictional hearing, the juvenile court declared the children dependents. It noted that mother had "only recently started . . . engaging in services" and deemed her testimony that she did not receive referrals for services "unconvincing" in light of the "very clear evidence" that the Agency tried "to engage her in services." The court scheduled a six-month review hearing for July 2021.

Thereafter, mother began utilizing the mental health services offered by the Agency: she received a diagnosis of bipolar disorder and began taking medication and attending counseling sessions. But mother continued to struggle with attaining sobriety — she missed drug tests and tested positive for amphetamines and cocaine. At the six-month review hearing in July 2021, the juvenile court found the Agency had provided reasonable reunification services and set a 12-month review hearing.

The Agency filed its 12-month review report in August 2021. In it, the Agency recommended terminating reunification services and scheduling a permanency planning hearing. The report summarized the services the Agency had provided; it also noted that in June, mother had stopped attending counseling sessions, and in August, she had numerous positive drug tests. At the 12-month review hearing in October, mother described her social workers as unhelpful and unresponsive; she also complained that the Agency had failed to recommend services to help her manage her mental health issues. But mother admitted she stopped attending therapy (without telling the Agency) because she "wasn't really feeling" the therapist. Mother also acknowledged using heroin, methamphetamine, and cocaine throughout the dependency proceedings. One of mother's social workers testified that she discussed mother's case plan with her multiple times and opined the case plan was tailored to meet mother's needs. The social worker further testified

mother had "been in and out of" several substance abuse treatment programs and had completed none. Nor had mother consistently attended therapy, another component of her case plan.

Counsel for mother asserted the Agency failed to provide reasonable reunification services. According to counsel, the services were not "specifically tailored" to address mother's "mental health issues" and were provided too late in the reunification process. The Agency's attorney disagreed. Counsel for the Agency noted mother's case plan had specific objectives — including that mother participate in mental health treatment, individual counseling, and substance abuse treatment — and that mother bore responsibility to "do something" to achieve those objectives and had not. Counsel argued mother would not be able to reunify with the children even if the juvenile court extended the reunification period as there was no indication mother "will do what she needs to do given her track record, given her lack of honesty, and given her inability to prioritize her substance abuse history and her mental health needs." Counsel for the children concurred.

The juvenile court terminated reunification services and set a permanency planning hearing. (§ 366.26.) In a thoughtful and comprehensive ruling, the court concluded returning the children to mother would create a "substantial risk of detriment" to their safety in light of mother's insufficient progress toward attaining sobriety and her lack of "mental health stability." The court opined mother was "in the throes of drug addiction" and lamented her failure to acknowledge "how destructive addiction has been in her life" and how that addiction had "impacted her conduct, has impacted her children, is the reason for removal, and is the reason why return is out of the question in the eyes of the Court."

The juvenile court also found the Agency had provided reasonable services. The court rejected the attempt of mother's counsel to shift blame to the Agency; it concluded mother's case plan "was designed adequately to address the concerns and she simply was not able to fulfill her end of the bargain . . . . The Agency made numerous referrals and re-referrals," and mother "simply was unable to follow through or simply decided not to. [¶] In some instances, her testimony was not very compelling. For example, when she decided not to continue on with therapy. She's not really received therapeutic support since. There was really no clear reason given for it. Certainly nothing compelling, nothing that would drive the Court to feel that the Agency did not somehow provide reasonable services."

## DISCUSSION

Mother challenges the sufficiency of the evidence supporting the juvenile court's reasonable reunification services finding. We reject the argument on the merits.[2]

Reunification services are typically "available to parents for a maximum of 18 months from the physical removal of the children from their home." (*T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1251 (*T.J.*).) "At each review hearing, if the child is not returned to the custody of . . . her

_____

[2] We deny the Agency's request to dismiss the petition as untimely. We conclude mother has demonstrated exceptional good cause for failing to timely file the notice of intent to file writ petition. (See *Jonathan M. v. Superior Court* (1995) 39 Cal.App.4th 1826, 1831; Cal. Rules of Court, rule 8.450(d) [reviewing court may extend deadline based on a showing of exceptional good cause].) We consider mother's claims on the merits, consistent with our obligation to "decide the petition on the merits by written opinion" absent "exceptional circumstances." (Cal. Rules of Court, rule 8.452(h)(1).) Additionally, and in the absence of a showing of prejudice to the Agency, we deem mother's notice of intent to include both children. (*Id.*, rule 8.452(a)(1) [reviewing court must liberally construe the petition].)

parent, the juvenile court is required to determine whether reasonable services that were designed to aid the parent in overcoming the problems that led to the initial removal and the continued custody of the child have been offered or provided to the parent." (*In re J.P.* (2014) 229 Cal.App.4th 108, 121.) At the 12-month review hearing, the juvenile court may not set a permanency planning hearing unless it finds, by clear and convincing evidence, reasonable services were offered. (§ 366.21, subd. (g)(4).)

"To support a finding that reasonable services were offered or provided to the parent, 'the record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult . . . .' [Citation.] Reunification services should be tailored to the particular needs of the family." (*In re A.G.* (2017) 12 Cal.App.5th 994, 1001.) But the " 'standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances.' [Citation.] The 'adequacy of reunification plans and the reasonableness of the [Agency's] efforts are judged according to the circumstances of each case.' " (*Ibid.*, brackets in original.)

We review the juvenile court's reasonable services finding for substantial evidence, bearing in mind the clear and convincing evidence burden of proof. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995–996; *T.J.*, *supra*, 21 Cal.App.5th at p. 1238.) "Substantial evidence is that which is reasonable, credible and of solid value." (*T.J.*, at p. 1238.) In reviewing the record for substantial evidence, we "do not evaluate the credibility of witnesses, reweigh the evidence, or resolve evidentiary conflicts. Rather, we

6

draw all reasonable inferences in support of the findings, consider the record most favorably to the juvenile court's order, and affirm the order if supported by substantial evidence even if other evidence supports a contrary conclusion." (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

Our review is "limited to that period following the last reasonable services finding, which if unchallenged is final and binding." (*Serena M. v. Superior Court* (2020) 52 Cal.App.5th 659, 675.) Here, the relevant period is between the six-month and 12-month review hearings, from July to October 2021. Mother has the burden to demonstrate the evidence is insufficient to support the juvenile court's finding that the Agency provided reasonable services. (*In re L.Y.L.*, *supra*, 101 Cal.App.4th at p. 947.)

Mother has not satisfied her burden. The record is replete with evidence that mother received mental health services, including a psychiatric evaluation, a medication evaluation, and individual therapy. The record also contains evidence that the Agency encouraged mother to make her mental health a priority and worked to help mother attain sobriety and achieve the other objectives of her case plan. Despite these efforts, mother used drugs throughout the dependency and stopped attending therapy because — to paraphrase mother — she did not like her therapist. Together, this evidence amply supports the juvenile court's finding that the Agency's efforts were reasonable under the circumstances. (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545–547.)

As she did in the juvenile court, mother blames the Agency for "ignoring" her mental health issues and for failing to tailor the reunification services to address her bipolar disorder. The lower court was not persuaded by this argument, and neither are we. "In almost all cases it will be true that more services could have been provided more frequently and that the services

provided were imperfect." (*In re Misako R.*, *supra*, 2 Cal.App.4th at p. 547.) As stated above, the question is whether the services were reasonable under the circumstances. The answer is yes. Nor are we persuaded by mother's assertion that the Agency's purported delay in securing a mental health evaluation for mother undermines the juvenile court's reasonable services finding. The Agency made referrals for mental health services at the outset of the dependency, but mother failed to accept the referrals or to consistently attend therapy. A social services agency cannot force a parent to participate in services. (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1233; *In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1365 [" 'an unwilling or indifferent parent cannot be forced to comply' " with reunification services].)

Mother's reliance on *T.J.*, *supra*, 21 Cal.App.5th 1229 is unavailing. There, the child welfare agency identified services for a developmentally disabled parent, but there were substantial delays in actually providing those services. (*Id.* at pp. 1240, 1242.) For example, the agency put the parent "in a holding pattern that resulted in a wait of nearly 11 months after her children were removed from her physical custody before she was provided with an individual therapist; it failed completely to provide her with help for anger management; . . . it failed to give her help with practical independent living skills; and it failed to provide her with housing." (*Id.* at p. 1248.) Under those circumstances, the appellate court concluded the agency's "limited steps" were inadequate and reversed the juvenile court's reasonable services finding. (*Id.* at p. 1249.)

This case bears little resemblance to *T.J.* The challenges facing mother arise out of her mental health conditions and substance abuse issues, not a documented intellectual disability. (*T.J.*, *supra*, 21 Cal.App.5th at p. 1250.) And mother was not in a "holding pattern" like the parent in *T.J.* — to the

8

contrary, the Agency offered services, but she failed to engage with the provided resources. That does not make the services unreasonable. (See *In re Christina L.* (1992) 3 Cal.App.4th 404, 414–415.)

In sum, substantial evidence supports the juvenile court's finding, by clear and convincing evidence, that the Agency provided mother with reasonable services.

## DISPOSITION

Mother's petition for extraordinary relief is denied on the merits. (Cal. Rules of Court, rule 8.452(h).) The stay request is denied. This decision is final immediately. (*Id.*, rules 8.452(i), 8.490(b).)

9

_____

Rodríguez, J.

WE CONCUR:


_____

Fujisaki, Acting P. J.


_____

Petrou, J.

A163878