Filed 1/31/24  V.P. v. Superior Court CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| V.P. et al.,<br><br>    Petitioners,<br><br>        v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY,<br><br>    Respondent;<br><br>ORANGE COUNTY SOCIAL SERVICES AGENCY et al.,<br><br>    Real Parties in Interest. | G063335<br><br>(Super. Ct. Nos. 22DP0041 & 22DP0042)<br><br>O P I N I O N |

        Original proceeding; petitions for a writ of mandate to challenge an order of the Superior Court of Orange County, Vibhav Mittal, Judge.  Petitions denied.

        Law Offices of Arthur J. LaCilento and Arthur J. LaCilento for Petitioner V.P.

        Juvenile Defenders and Donna P. Chirco for Petitioner D.R.

Leon J. Page, County Counsel, Karen L. Christensen and Aurelio Torre, Deputy County Counsel, for Real Party in Interest Orange County Social Services Agency.

No appearance for Real Parties in Interest B.S. and E.S.

\*   \*   \*

V.P. (Father) and D.R. (Mother) petition this court for a writ of mandate to compel the superior court to vacate its orders setting a permanency hearing (Welf. & Inst. Code, § 366.26, subd. (a), all further statutory references are to the Welfare and Institutions Code), for their children, eight-year-old B.S. and six-year-old E.S.

Father argues there was insufficient evidence there was a substantial risk of detriment to the children if returned to his care and he did not receive reasonable services. Mother also raises the services argument. None of their contentions have merit, and we deny the petitions.

FACTS

*I. Protective Custody Warrant*

In January 2022, the Orange County Social Services Agency (SSA) filed an application for a protective custody warrant for then six-year-old B.S. (Son) and four-year-old E.S. (Daughter). The social worker alleged that in September 2021, a neighbor reported Father dragged Mother with his vehicle about 50 yards. The children did not witness the incident. Mother reluctantly got a protection order.

About a week later, the social worker visited the family home. Mother denied current drug or alcohol use but said she used methamphetamine twice the previous year. She denied she had mental health or domestic violence issues, or a criminal record. As to the incident, Mother said she argued with Father about using the car. After Father got into the car, Mother held on to the car door. Father accelerated, and Mother fell. Mother agreed to voluntary family services (VFS).

2

Later, the social worker spoke to Father. Father denied he had mental health or substance abuse issues, or a criminal record. Father agreed with Mother's description of the incident. He explained he was in a hurry to go to work and asked Mother to let go of the car door. She refused, he accelerated, and she fell. Father agreed to VFS.

Mother and Father participated in VFS. The VFS agreement included random drug testing and a substance abuse outpatient program for Mother and parenting and anger management programs for both parents. The social worker reported the parents completed an intake for a parenting program and Mother eventually completed an intake for an anger management program.

Mother was called for random drug testing. She tested twice (one negative and one in progress) and missed four tests. Mother missed her intake appointment for a substance abuse program. She admitted to using methamphetamine during late November or early December 2021.

A few days before Christmas 2021, the social worker made an unannounced home visit. Daughter answered the door naked, and Mother was sleeping. The social worker found one of the stove burners turned on. Mother said Daughter would sometimes wake up at night, and she felt overwhelmed.

After the first of the year, the social worker spoke with Father, who said he thought Mother was using drugs. Father was having trouble finding someone who could watch the children while he was at work. After a meeting with SSA, Mother scheduled an intake appointment for substance abuse treatment and wellness exams for the children. However, a few days later, the juvenile court issued a warrant for removal of the children from Mother and Father.

II. *Petition/Detention*

In January 2022, SSA filed a petition alleging Son and Daughter were children as described in section 300, subdivisions (b)(1) (failure to protect). The petition

3

alleged the children were at risk because Mother and Father had an unresolved domestic violence problem. Additionally, it alleged Mother had an unresolved substance abuse issue—she tested positive for methamphetamine on December 30, 2021. It also alleged Mother had unresolved mental health issues and engaged in self-harming behavior (hitting herself against the wall). Finally, it alleged Father had a substance abuse problem and criminal history.

In the detention report, SSA recommended detaining the children, who were then at Orangewood Children and Family Center. The social worker opined Mother's substance abuse impaired her ability to care for the children, and Father failed to protect the children from Mother or provide for their care. In addition to the referring incident, the social worker detailed several other incidents. First, in October 2020, Mother tried to stab Father during an argument. Second, there was an unsubstantiated allegation that Mother sent Father two photographs. In the first photograph, Daughter was sleeping face up and had a white paper towel with red dye on it over her right wrist (as if her wrist was cut open) with the caption, "'[T]his can happen to her.'" In the second photograph, Son was on the bed face down and Mother was holding a knife over his back with the caption, "'[L]ook what can happen.'" Finally, in June 2021, when Father left for work, Mother followed him because she thought he was having an affair. When he returned home, they argued, and Mother punched him in the back while the children were present. SSA recommended separate, supervised visitation.

At the detention hearing, the juvenile court concluded a prima facie case had been made and ordered Son and Daughter detained in a care facility. The court ordered a minimum of 10 hours of supervised visitation per week; parents were allowed to visit the children together. Mother objected to out-of-county placement. The court set a jurisdiction hearing for February 23, 2022.

4

*III. Jurisdiction/Disposition*

In the jurisdiction/disposition report, SSA recommended sustaining the petition, declaring Son and Daughter dependents, and providing reunification services to Father and Mother. The children were still at Orangewood.

The social worker reported that during an interview, Mother agreed with the depiction of the incident. Mother did not call the police because they blamed her for the past domestic violence. Mother admitted she used methamphetamine in January 2022 but claimed it did not affect her behavior—she used one to two days per month. She denied having mental health issues and blamed Father for antagonizing her.

As to services, SSA referred Father and Mother to individual counseling and anger management programs. It referred Mother to a substance abuse program and random drug testing. Mother completed her intake and one anger management class but missed three classes; SSA reinstated her for anger management in February 2022. Mother was participating in random drug testing. In January 2022, she tested positive twice and missed two tests. In February 2022, Mother was waiting for a Spanish speaking therapist to begin counseling. Meanwhile, the paternal grandfather (Grandfather) had been approved for placement.

At the jurisdiction/disposition hearing, Father and Mother submitted on the petition (§ 300, subd. (b)(1) [failure to protect]). The juvenile court sustained the petition, declared Son and Daughter to be dependents of the court, removed them from parental custody, and ordered SSA to provide reunification services to Father and Mother. The court approved the parents' case plan and set a six-month review hearing for August 8, 2022. Mother's case plan included general counseling, cooperation with any court ordered psychiatric evaluation, an anger management program, parenting education, and substance abuse treatment and testing. Father's case plan responsibilities included general counseling, an anger management program, and parenting education. On the same day as this hearing, Son and Daughter were placed with Grandfather and the

5

paternal grandmother (Grandmother) in Mountain View, California (Grandparents). Father and Mother both said they were willing to drive to see the children.

*IV. Six-month Review*

In the six-month review report, SSA recommended continuing reunification services, finding suitable placement, and scheduling a 12-month review hearing. Son and Daughter were still living with Grandparents.

Father was participating in individual counseling and had completed an anger management program in May 2022. The social worker reported Father stated he had learned coping skills and how to communicate better. Father said that when he was upset, he would ask Mother for time to calm down and he would go for a walk. Father also completed an in-home coaching service program. Father was authorized 15 hours of visitation per week—10 supervised and 5 unsupervised. Although Father did not utilize the entire allotment because of the travel time, he enjoyed the visits and did not mind traveling to see the children. The social worker opined Father had "made substantial progress."

Mother was participating in individual counseling and had completed an anger management program in April 2022. The social worker reported it was difficult to get information from Mother because she always reported she was doing well. Mother stated she wanted to meet her goals and be sober. Mother also completed an in-home coaching service program, but her weekly visits with her mentor were inconsistent. In early 2022, Mother had been referred for a psychiatric evaluation and was provided with community resources. In April and May 2022, Mother was provided additional referrals, one of which was terminated because Mother failed to respond to program outreach. Mother was participating in outpatient drug treatment. However, Mother tested positive for methamphetamine three times and missed six tests. Mother admitted to the social worker that she had a relapse. Mother's therapist and the social worker, who provided

6

her resources, encouraged her to participate in Narcotics Anonymous (NA). Mother was authorized 10 hours of supervised visitation per week.

The parents visited the children together. The Grandparents reported Mother was impulsive and did not express her anger appropriately during visits; she argued with Father in front of the children. When Mother was upset, she did not interact with the children. Additionally, she slept for long periods of time during visits. The social worker opined Mother had made "moderate" progress. (Capitalization omitted.)

At the six-month review hearing, the parents submitted on the report. The juvenile court found that by a preponderance of the evidence the return of the children to the parents would create substantial risk of detriment to their safety, protection, or physical or emotional well-being. The court concluded Father and Mother had been provided with reasonable reunification services, Father's progress was substantial, and Mother's progress was moderate. The court opined there was a substantial probability the children would be returned to a parent within six months and continued services. The court approved the parents' case plan, which added couples counseling. The court set a 12-month review hearing for February 16, 2023.

*V. Twelve-month Review*

In the 12-month review report, SSA recommended termination of reunification services, finding suitable placement, and setting a section 366.26 hearing (.26 hearing). Mother and Father continued to live together. Father's family from Mexico (two adults and three children) lived with them. Son and Daughter lived with Grandparents.

As for Father's services, he completed individual counseling. Father's therapist opined he had demonstrated insight and had become more self-aware with respect to domestic violence. She added, though, Father "continue[d] to engage in pattern like behavior indicative of being involved in domestic violence relationships." Father's progress on his case plan was "moderate." (Capitalization omitted.)

7

With respect to Mother's services, she completed individual counseling after SSA had her referral reinstated despite multiple no-shows. Mother's therapist opined Mother made progress on her substance abuse issues as well as awareness of the types and cycles of domestic violence. The therapist encouraged Mother to attend NA meetings for her long-term sobriety. The social worker gave Mother a referral for a psychiatric evaluation, but she did not qualify for those services. But Mother reported she was provided with a resource for a psychiatric evaluation and would follow up. Another therapist recommended Mother continue with the perinatal program for 90 days in an effort to obtain a psychiatric evaluation. The social worker submitted a referral for conjoint counseling but it was terminated because Father and Mother did not complete the intake. Mother continued to participate in substance abuse treatment and drug testing. During this period, she had 29 negative tests, 4 no shows, and 2 positive tests. Mother had not participated in NA. The social worker reported that in January 2023, Mother got in a heated verbal altercation with another female in the home, and verbally confronted both the female and Father. Father told the social worker that he did not attempt to diffuse the argument because he did not want to make Mother angrier. Mother's progress on her case plan was "minimal." (Capitalization omitted.)

During this period, the parents' visitation was inconsistent because of car problems. Grandparents reported the parents would sleep for portions of the visits and thus have limited interactions with the children. They added Mother was upset and aggressive during visits and was not patient with the children. Grandparents reported Mother was upset when Father used his unsupervised visitation hours with the children. The social worker reported Father was granted five supervised and five unsupervised hours of weekly visitation, but he did not use his full allotment of unmonitored contacts. The social worker reported Mother was granted unsupervised visitation hours but they were discontinued because of her missed and positive drugs tests. The juvenile court continued the 12-month review hearing to April 17, 2023.

8

Addendum reports from this time period stated Father and Mother participated in 15 sessions of conjoint counseling. Father told the therapist that he had not ended the relationship in the past because he felt sorry for Mother. Mother noted that she relapsed due to hanging out with certain friends. The parents had worked on their reactions to Grandparents' comments.

Mother had not followed up on her psychiatric evaluation. The social worker provided Mother with resources, but Mother had not followed up. The social worker explained Mother graduated from her drug treatment program in June 2023, enrolled in the aftercare program, and began testing.

The social worker explained that in March 2023, the wife of Father's cousin, who was staying at Father and Mother's residence, accused Father of having sexually assaulting her. Father apologized and stated he had been drinking. Subsequently, the cousin and his wife reported that on multiple occasions Mother screamed at them and threatened to call immigration on them. During a telephone call, the social worker heard Mother screaming and cursing at Father's cousin and his wife.

Father continued to forego his full allotment of unsupervised visitation time. During one visit, Mother became upset with the children, and Father did not calm her as she argued with Grandparents. The social worker explained the children regressed after visits with the parents because the parents did not discipline them. The children were comfortable with Grandparents and had adjusted well to the placement. The juvenile court continued the 12-month review hearing to June 20, 2023. On that date, the court continued the 12-month review hearing and 18-month permanency hearing to August 7, 2023.

VI. *Eighteen-month Review*

A. *Reports*

In the 18-month review report, SSA recommended termination of reunification services, finding suitable placement, and setting a .26 hearing. Mother and

Father continued to live together. The children remained with Grandparents and were doing well. The social worker reported Son would not discuss any potential trauma because his parents told him not to say anything.

The social worker reported Mother had not participated in a psychiatric evaluation despite having been provided a referral. In May 2023, the social worker provided Mother with a referral for a psychiatric evaluation. The following month, Mother told the social worker that she had not been able to follow up.

Father initially had not used his unsupervised visits but began to "[s]poradically" do so. The social worker considered liberalizing Mother's visits to include unmonitored time.

The social worker reported that in June 2023, Father, Mother, and Daughter went to the store. Father began screaming and cursing at Mother because he thought she was flirting with someone. When Daughter started crying, the parents screamed at her to "'shut up.'" Grandparents reported the parents showed little to no patience with the children and Father put their safety at risk because he did not supervise them. The social worker reported that in July 2023, the children were playing in an arcade when Father became aggravated with them for not listening and screamed at the children and slapped their hands. At another visit, Mother screamed at Daughter after she told Grandmother that Mother had told Daughter they would be going on a vacation together. Grandparents reported Daughter had aggressive behavior after visits and did not listen well. The parents would sleep on visits for a few hours and had limited interaction with the children. Father's and Mother's progress was "minimal." (Capitalization omitted.) The juvenile court continued the matter several times.

Addendum reports from this time period stated Mother had not followed up on her psychiatric evaluation in August, September, and October 2023 despite the fact the social worker and Mother's attorney had provided her with several resources. The social worker stated Father was frustrated with Mother for failing to follow up on her

10

psychiatric services.  Mother tested positive for methamphetamine twice in August and once in September.  The social worker reported that in August 2023, Father stated that Mother had told him to get rid of a rolled-up bill containing methamphetamine; when asked why he did not report the incident to SSA, Father stated he did not think it was a big deal because he got rid of it.  Father stated he was tired of dealing with Mother's issues and was no longer interested in being in a relationship with her.  The social worker stated that despite Father's prior statement he would leave Mother if she tested positive, he had failed to do so.

The social worker made an unannounced visit to the home on September 26, 2023.  Mother answered the door and appeared to have been sleeping.  Mother claimed she and Father had separated, they did not live together, and she had moved her belongings to a friend's house.[1]  Mother said she would still stop by to cook for Father, and they would still communicate.  The social worker saw Mother's belongings throughout the residence.  That same day, Father also claimed they had separated, but Mother had not moved her belongings despite his multiple requests to do so.  Father stated that Mother was aggressive and argued about everything.

Grandparents reported the parents continued to sleep during visits and argue in front of the children.  The parents missed multiple visits between late July and mid-August.  In July 2023, Son told the case manager that his parents "'always argue,'" it made him feel "'scared,'" and he just tried to ignore it.  Grandparents reported to the social worker an October 2023 visit went well.  They added, though, the parents still argue, discreetly, and they fail to discipline the children.

B.  *Hearing*

Social worker Dora Aquino-Moscoso testified she had been assigned to the case since April 2022.  She stated Father had completed the components of his case plan

---

[1]	Three days later, Mother filed a change of address form with the juvenile court on September 29, 2023.

but continued to engage in conflict with Mother. She added that despite Father's claims of ending their relationship, Mother and her belongings were at his residence during her September 2023 unannounced visit. Father had completed a parenting class and also addressed parenting issues in therapy. Father was not referred to a new anger management course after the 12-week course he completed in 2022 or to a new individual counseling referral after Father completed those services. Father had learned the necessary skills from his anger management services but did not implement these skills.

Aquino-Moscoso testified Mother had also completed the components of her case plan and was compliant with drug testing. She did not believe there were additional services to address Mother's issues that had not yet been offered. Mother's therapist had suggested that she follow up with aftercare and NA meetings, but Mother did not do so. In addition to her individual counseling referral, Mother also participated in counseling in her substance abuse treatment up to March 2023. Mother had addressed mental health during her counseling. Mother had addressed anger management in multiple services. Mother was "able to recite what she ha[d] learned in these services, but [she was] not able to implement the learned skills." Mother had "successfully completed [anger management] services, so there's only so much funding that we can provide." Mother had received "necessary services numerous times" but continued to test positive for methamphetamine. Mother completed substance abuse treatment in early 2023 and had not been referred to additional services. Mother did not acknowledge methamphetamine use to Aquino-Moscoso. As for a psychiatric evaluation, Mother was unable to obtain such services through Orange County Health Care Agency (HCA) because of her legal status, but SSA provided her many resources during the case. Mother was provided five evaluation resources other than HCA, one of which Aquino-Moscoso called, but she did not get a response. Mother had talked about whether she had called the four remaining resources but did not say she was having trouble making an appointment. Aquino-Moscoso did not provide Mother assistance or referrals other than

12

the five provided resources since May 2022. She added that Mother "had several appointments for psychiatric evaluations" and she just had to follow up—Mother did not ask for help to obtain mental health services. Aquino-Moscoso told Mother that she would request funding to cover services Mother enrolled in on her own. When asked, she agreed it is a parent's responsibility to seek services on their own with a referral from SSA. Aquino-Moscoso never requested the juvenile court appoint an Evidence Code section 730 evaluator.[2] Mother had learned the necessary skills from her anger management services but did not implement these skills. Mother had not requested additional mental health or substance abuse resources.

Aquino-Moscoso testified the parents had not expressed any concerns about the children's placement with Grandparents. She was not aware of the parents ever having objected to the placement. The parents never informed her that either they could not visit because of the distance or the trips were a financial hardship. They did not request funding for the trips. When the parents expressed it was difficult because of the travel time, Aquino-Moscoso had suggested the parents split their weekend visits over two days and alternate rest times during the trip to allow for more active visitation.

Aquino-Moscoso stated that from approximately August 2022, Father complained about the distance to the children's placement. She had not offered travel vouchers or transportation funding to Father. The parents knew they could visit separately, and Aquino-Moscoso had recommended to Father that he visit separately so that he could use his unsupervised visitation time. Father had been affectionate and appropriate most of the time during visits, with the children looking forward to these contacts. When encouraged to visit with the children separately, Mother was encouraged to take the train and/or stay overnight because Father said she could not drive herself to the visits.

---

[2] Mother's case plan included a psychiatric/psychological evaluation.

13

As for the risk in returning the children to parental custody, Aquino-Moscoso stated Father had learned about domestic violence through his services but continued to have multiple conflicts with Mother, and he also continued to deny having knowledge of Mother's substance abuse. Even if the parents lived separately, Aquino-Moscoso did not believe the children should be returned to Mother's care.

Father testified he had been separated from Mother since around September 2023 and lived alone. He separated from Mother because he "didn't see a change" and wanted his children back. He added that Mother being in the house was a danger because of her anger and substance abuse. Father would agree to a no-contact order as to Mother and participate in in-home services to have his children returned. Mother had moved out of their shared residence but sometimes returned without his permission. They still rode together to visit their children.

Father had learned how to avoid fights and "not let things escalate" in his anger management class. Father denied ever having an anger management problem and said he had "always been calm." In his services, he learned how to work with and discipline the children. Father believed his visits had generally been "excellent." He denied ever having a verbal argument with Mother in the children's presence. He also denied having domestic violence problems with Mother. He believed the children were removed due only to verbal arguments, but he admitted Mother had hit him. Father denied having perpetrated domestic violence.

After counsel argued, the juvenile court concluded SSA provided the parents with reasonable services and the children could not be safely returned to parental custody. With respect to services, the court stated that although services were not "perfect, . . . they were more than reasonable by the clear and convincing evidence standard." The court opined that the parents engaged on some but not all of the services SSA provided. The court acknowledged the parents had to travel some distance to visit the children, but it did not appear the parents implemented the strategies SSA suggested

14

to lessen the burden. Additionally, the court noted the parents agreed to placement with Grandparents in Mountain View. The court added there was evidence the social worker provided Mother resources for a psychiatric evaluation but Mother did not complete it.

As to detriment, the juvenile court found Aquino-Moscoso credible, while finding Father credible only to a limited extent: "I found [F]ather credible to an extent when he at least acknowledged that when he and [M]other lived together, that conflict was certain; but the [c]ourt didn't find [F]ather credible when describing his separation from [M]other. There was evidence that was inconsistent with that, and the [c]ourt would credit that inconsistent evidence about when the separation had, in fact, occurred. [¶] Even if the separation had occurred, as [F]ather testified to, that separation occurred more than 18 months after the kids were first removed, and the [c]ourt has insufficient evidence presented to conclude that the parents will remain separated and be able to safely coparent in separate residences." The court opined there were "multiple instances in 2023" that demonstrated both Father and Mother put the children at risk. The court explained that Father was unable to take advantage of unsupervised time with the children because of his deference to Mother. The court added Mother was still struggling with her substance abuse as evidenced by her recent positive tests. The court concluded the parents' problems took an emotional toll on the children.

The juvenile court concluded return to parental custody would place the children at substantial risk of detriment and that reasonable services had been provided. The court added that even if "reasonable services had not been offered by the clear and convincing evidence standard, the [c]ourt doesn't believe there is evidence to support any additional services for the parents" because the parents demonstrated little progress with the services that were provided. The court terminated reunification services and set a .26 hearing for March 2024.

DISCUSSION

*I. Substantial Risk of Detriment*

Father argues there was insufficient evidence of a substantial risk of detriment to the children if returned to his care. We disagree.

At the 18-month hearing, the juvenile court must order a child returned to the parent or legal guardian's custody unless it finds by a preponderance of the evidence that return would create a substantial risk of detriment to the child's safety, protection, or physical or emotional well-being. (§ 366.22, subd. (a)(1).) The court may order an additional six months of reunification services if it finds by clear and convincing evidence that the parent is making significant and consistent progress in establishing a safe home for the child, and if it finds that there is a substantial probability the child will be returned in that extended time or that reasonable services have not been provided. (§ 366.22, subd. (b)(1).) Otherwise, the court must set a .26 hearing to establish a permanent plan for the child. (§ 366.22 subd. (a)(3).)

We review an order terminating reunification services and setting a .26 hearing for substantial evidence, reviewing the record in the light most favorable to the juvenile court's conclusion, and drawing all reasonable inferences from the evidence to support its findings. (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 688-689.) We do not reweigh the evidence or exercise our independent judgment, but rather determine whether the record contains facts sufficient to support the juvenile court's findings. (*Id*. at p. 689.)

Here, sufficient evidence supported the juvenile court's finding that returning the children to Father's care would create a substantial risk of detriment to their safety, protection, or physical or emotional well-being. The parents had a serious history of domestic violence, including when Father drove and dragged Mother as she clung to a car door. Despite that incident and the other documented incidents, Father testified he

16

had no anger management problem, he had "always been calm," and the children were only removed for verbal arguments. The record belies his claims.

Father's anger management problems and conflicts with Mother, and the accompanying domestic violence risks to the children, were apparent during visitation. During one visit, Father yelled at Mother and both parents screamed at Daughter as she cried. During another visit, Father screamed at both children in an arcade room. Although there was evidence Father interacted well during visits, Son stated the parents' conflicts scared and upset him. While Father participated in and completed services, the juvenile court was well within reason in concluding Father's anger issues and conflicts with Mother continued to plague their relationship.

Additionally, the record contains evidence establishing Father would not protect the children from domestic violence between the parents or from neglect due to Mother's substance abuse. Father incorrectly contends the juvenile court "found [him] to be [c]redible in his testimony." The transcript makes clear the juvenile court found Father credible in acknowledging conflicts with Mother in the home, but then found him to lack credibility as to separating from Mother. The parents did not separate in the runup to or throughout the dependency case despite the lengthy domestic violence and Mother's substance abuse. Father confessed he had previously failed to leave Mother because he felt sorry for her. In late September 2023, the social worker made an unannounced visit to their residence and found Mother who appeared to have just woken up. The parents also visited together even after their claimed separation. The juvenile court could reasonably rely on this evidence to disbelieve the parents separated or that any separation would last.

Father contends he made substantial progress in his services and had "demonstrated insight" into why the children entered the dependency system. Although Father completed various services, Aquino-Moscoso stated Father had learned about domestic violence through his services but continued to have multiple conflicts with

17

Mother, and he also continued to deny having knowledge of Mother's substance abuse. She said he did not implement the skills he had learned. Again, Father yelling at Mother in the store in June 2023, and Father screaming at the children in July 2023 supported a finding Father still could not control his anger.

An incident in summer 2023 established Father continued to enable Mother's substance abuse. Despite his previous pleas that he would leave Mother if she continued her drug use, Father continued to stand by her after several positive tests and her effort to hide her drug use. When Mother found a rolled-up bill containing methamphetamine, she asked Father to dispose of it, which he did. Father did not think this was important because he got rid of it. Contrary to Father's claims, this incident tends to establish alternative means such as in-home services and unannounced visits would not protect the children. Father's actions and minimization of the incident were evidence tending to prove the risks to the children were still present. Based on the record before us, there was sufficient evidence establishing that returning the children to Father's care would create a substantial risk of detriment to their safety, protection, or physical or emotional well-being.

## II. Reunification Services

Father and Mother contend the juvenile court erred by setting a permanency hearing because they were not offered reasonable services. We disagree.

Generally, the juvenile court is required to order family reunification services when a child is removed from the parent's custody at a disposition hearing. (§ 361.5, subd. (a).) "The juvenile court cannot terminate parental rights if a parent never receives reasonable services." (*Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 637 (*Michael G.*).) Reunification services are generally available to parents for a maximum of 18 months from the removal of their children from their home. (§ 361.5, subd. (a)(3)(A).)

18

At an 18-month review hearing, the juvenile court must "determine by clear and convincing evidence whether reasonable services have been offered or provided to the parent." (§ 366.22, subd. (a)(3).) "To support a finding that reasonable services were offered or provided to the parent, 'the record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult . . . .' [Citation.] Reunification services should be tailored to the particular needs of the family. [Citation.] [¶] 'The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances.' [Citation.] The 'adequacy of reunification plans and the reasonableness of the [Agency's] efforts are judged according to the circumstances of each case.' [Citation.]" (*In re A.G.* (2017) 12 Cal.App.5th 994, 1001.)

"Though a court at the 18-month review hearing must determine whether reasonable services have been offered or provided to the parent, an affirmative answer is not a statutory prerequisite to setting the permanency planning hearing."[3] (*Michael G., supra,* 14 Cal.5th at pp. 629-630.) If reasonable services have not been ordered, the court may continue the permanency planning hearing and extend reunification services "provided that a continuance shall not be granted that is contrary to the interest of the minor" (§ 352, subd. (a)(1)) and "upon a showing of good cause." (*Id*. subd. (a)(2)); *Michael G., supra,* 14 Cal.5th at p. 633 [authority to continue the permanency planning hearing implies power to continue reunification efforts].) "In considering the minor's

---

[3]     Effective January 1, 2024, section 366.22, subdivision (b)(2)(A), will require a finding that reasonable services were provided in the preceding review period in order to advance the case to a .26 hearing, absent a specialized showing as to the child's best interests. (Stats. 2023, ch. 458, § 2.)

interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements." (§ 352, subd. (a)(1).) "[G]ood cause" may exist in extraordinary circumstances, including where the child welfare agency has offered "'"inadequate services."'" (*Michael G., supra,* 14 Cal.5th at p. 632.)

We review the juvenile court's finding that reasonable services were provided for substantial evidence. (*Patricia W. v. Superior Court* (2016) 244 Cal.App.4th 397, 419 (*Patricia W.*).) Because the court must make its finding by clear and convincing evidence, the question we face "is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995-996.) "Substantial evidence is evidence that is 'of ponderable legal significance,' 'reasonable in nature, credible, and of solid value,' and '"substantial" proof of the essentials which the law requires in a particular case.' [Citation.]" (*Id.* at p. 1006.) We "view the record in the light most favorable to the prevailing party below and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Id.* at p. 996.)

Here, although the juvenile court was not required to find the parents' services were reasonable to set a permanency hearing, sufficient evidence supports that conclusion. Prior to the current review period, Father and Mother had both completed anger management and in-home parent coaching services. As for the current review period, the parents completed their individual counseling and conjoint counseling. Additionally, Mother eventually completed drug treatment in mid-2023. Thus, SSA provided Father and Mother with services during reunification review periods that targeted the domestic violence/anger management and substance abuse issues that

precipitated the children's removal.  Indeed, both Father and Mother demonstrated their grasp of the proper concepts and problem areas during the case—they simply failed to put those concepts into practice.  Both parents contend SSA was derelict in not providing new referrals to multiple services they previously completed, such as anger management, parenting education, and individual therapy.  But the parents learned what to do.  They just refused or proved incapable of doing it.  Father and Mother do not provide any persuasive reason they should have been offered serial, duplicative referrals simply because they continued to demonstrate anger and substance abuse issues.

Father contends his services were deficient because SSA did not provide for separate visitation for the parents, transportation subsidies, or more liberalized contacts with the children.  To the contrary, the parents knew they could visit separately, and Aquino-Moscoso had recommended to Father that he do so to use his unsupervised visitation time.  Additionally, Father ignores SSA provided him with unsupervised visits that he would shorten to placate Mother.  As for alternative travel or transportation subsidies, neither parent expressed financial hardship nor requested assistance.  Indeed, the parents did travel to and participate in visits throughout the case's reunification period.

Mother, and Father, criticize SSA's handling of Mother's psychiatric evaluation.  SSA made repeated efforts to get Mother to participate in a psychiatric evaluation and provided her with numerous resources but she never followed through and completed the evaluation.  At each step during the reunification period, Mother failed to respond to program outreach or follow through with a resource.  When she did not qualify for one program, SSA provided her with another resource, but she failed to follow through with that resource.  There was evidence Father was frustrated with Mother for not following through with her psychiatric evaluation.  And late in the reunification period, Mother admitted her attorney had provided her a resource but she had not followed up.

21

Mother complains "the social worker only gave [her] a list of five names to call and did nothing else, in [18] months, to help [her] participate in a psychiatric assessment when the first two providers turned her away." Not so. As Aquino-Moscoso explained, SSA provided Mother with "many resources" during "the history of the case." She added Mother was not having trouble making an appointment, and in fact "had several appointments for psychiatric evaluations, it was just a matter of her following up with those appointments." It was Mother's lack of effort, not SSA's, that prevented an evaluation.

Mother relies on *Patricia W., supra,* 244 Cal.App.4th 397, and *In re K.C.* (2012) 212 Cal.App.4th 323, to support her contention SSA failed to assist her with completing a psychiatric examination. But in those cases SSA made no efforts to assist the parent. (*Patricia W., supra,* 244 Cal.App.4th at pp. 425-426 [SSA made no efforts to address a schizophrenic mother's medication resistance]; *In re K.C., supra,* 212 Cal.App.4th at p. 329 [SSA "made no attempt to secure the evaluation elsewhere or to demonstrate that no other avenues were reasonably available for securing the recommended evaluation"].) Here, Aquino-Moscoso maintained reasonable contact with Mother and made efforts for Mother to complete her psychiatric evaluation, but Mother did not follow through. Because we conclude SSA provided reasonable services, we need not address Father's claim the juvenile court may extend services past the 18-month date.

## DISPOSITION

The petitions for writ of mandate are denied.


                                        O'LEARY, P. J.

WE CONCUR:


MOORE, J.


DELANEY, J.